IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY A. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-3058-CV-S-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION REVERSING AND REMANDING FINAL DECISION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application. The Commissioner's decision is reversed and remanded.

## I. BACKGROUND

Plaintiff is a 31-year-old female with past work as a loan clerk, waitress, housekeeper, nurse aide, cashier, and car wash attendant. The ALJ found Plaintiff suffered from the following severe impairments: pseudoseizures; posttraumatic stress disorder (PTSD); major depressive disorder (MDD); migraine headaches; L5–S1 disc bulge; asthma; and obesity.[1]

The ALJ determined Plaintiff retained the ability to perform a limited range of light unskilled work. According to a vocational expert (VE) who testified at Plaintiff's hearing, a hypothetical worker with the abilities described by the ALJ would be able to work as a mail clerk and routing clerk. Based on the VE's testimony, the ALJ concluded that

---

[1] A synonym for pseudoseizure is hysteric convulsion. Stedman's Medical Dictionary 1592 (28th ed. 2006). A hysteric convulsion is "a convulsion resulting from conversion disorder . . . . SEE psychogenic *seizure*." *Id.* at 439. A psychogenic seizure is "a clinical spell that resembles an epileptic [seizure], but is not due to epilepsy. . . . [T]he behavior is often related to psychiatric disturbance, such as a conversion disorder." *Id.* at 1744.

Plaintiff would be able to make a successful adjustment to other work that exists in significant numbers in the national economy, precluding a finding of disability.

## II.  DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole.  *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011).  Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion.  *Id.*  Evidence that both supports and detracts from the ALJ's decision must be considered.  *Id.*  If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed.  *Id.*  In reviewing Plaintiff's arguments for reversal, the Court has focused on the ones it deems most compelling.

Plaintiff contends the ALJ should have given more weight to the opinion of psychologist Donald E. McGehee, EdD.  Dr. McGehee performed a consultative evaluation of Plaintiff on September 28, 2009.  He diagnosed her with schizoaffective disorder, bipolar type, and schizotypal personality disorder, and he surmised she was "prone to decompensate into schizophrenia if she [was] sufficiently stressed."[2]  Dr. McGehee opined Plaintiff was unable to understand, remember, and carry out simple instructions, and could not respond appropriately to supervision, coworkers, and usual work situations.  In addition, Dr. McGehee opined Plaintiff was markedly limited in her ability to complete a normal workday and workweek without interruptions from

---

[2]  Schizoaffective disorder is "a disorder in which a mood episode and the active-phase symptoms of Schizophrenia occur together and were preceded or are followed by at least 2 weeks of delusions or hallucinations without prominent mood symptoms."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) 298 (4th ed. text rev. 2000).  Schizotypal personality disorder is "pattern of acute discomfort in close relationships, cognitive or perceptual distortions, and eccentricities of behavior."  *Id.* at 685.

psychologically-based symptoms and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. The VE testified an individual with these limitations would be unable to perform unskilled work (which the ALJ concluded Plaintiff could do).

The ALJ gave Dr. McGehee's opinion little weight because Dr. McGehee was a non-treating source and because the ALJ considered the opinion to be inconsistent with the record overall. With respect to this latter reason, the ALJ noted no other examining or treating source had observed Plaintiff to exhibit symptoms of schizoaffective disorder or schizotypal personality disorder, nor had any other treating or examining source assessed Plaintiff as being so limited in her functioning.

In attempting to defend Dr. McGehee's opinion, Plaintiff counters that other sources *did* diagnose her with affective disorders (like bipolar disorder and MDD) and personality disorder not otherwise specified; however, Plaintiff fails offer a persuasive explanation for how these diagnoses are related schizoaffective disorder and schizotypal personality disorder.[3] Plaintiff also suggests Dr. McGehee's diagnoses were different than other doctors' diagnoses because Dr. McGehee performed clinical testing. But although Dr. McGehee administered the Millon Clinical Multiaxial Inventory–Third Edition, his report fails to explain how this test supported his opinion. *See* 20 C.F.R. § 404.1527(d)(3) (stating more weight is given to opinion when medical source supports it with medical signs and laboratory findings, and the better an explanation is given for the opinion). This is especially significant given that Dr. McGehee's mental status examination was, as the Commissioner notes, "fairly benign," Brief, Doc. 24, p. 9.

Plaintiff also argues Dr. McGehee's opinion was "entirely consistent with the record as a whole" as it existed at the time of the ALJ's decision, but the only evidence

---

[3] For example, Plaintiff suggests other doctors' diagnoses of personality disorder not otherwise specified supports Dr. McGehee's diagnosis of schizotypal personality disorder because the latter is "merely . . . more specific." Brief, Doc. 21, p. 13. This assertion is not accurate. *See* DSM–IV–TR 685 (discussing personality disorder not otherwise specified).

3

she cites for this argument is that "there was no contrary opinion from a treating or examining medical source," Brief, Doc. 21, pp. 14–15. The mere fact there was no contrary opinion does not establish Dr. McGehee's opinion was "entirely consistent with the record as a whole." In fact, from Plaintiff's alleged onset date (in January 2006) until about 5 months before the ALJ's October-2009 decision, there is very little evidence in the record that supports Dr. McGehee's opinion.

But beginning in late May 2009, Plaintiff reported an increase in her depression and anxiety symptoms. On May 29, she reported to her primary care physician (Matthew Stinson, MD) that her migraines and anxiety were worsening and that her "spells" (i.e., pseudoseizures) prohibited her from working as a loan clerk. (Plaintiff had been working as a loan clerk for about 5 months. This was one of the jobs the ALJ found Plaintiff could no longer perform.) Dr. Stinson encouraged her to contact her psychiatrist.

On June 9, she started counseling sessions with Della Goodwin, MSW, LCSW. Among other things, she told Ms. Goodwin that her job was stressful and that she felt depressed and hopeless almost every day. On July 14, she reported that her anxiety and "seizure" symptoms had been worsening over the last few weeks and that she was not sleeping well, and the next day she reported that she had missed work for the last 2 days. She also stated that she was "struggling" to be able to work and that she felt she was becoming aggressively ill by doing so. She reduced her hours to part-time. On August 24, Dr. Bains noted that she was having lots of anxiety, constantly shaking, feeling irritable, tired, and very depressed, experiencing mood swings and lots of crying spells. On September 14, she reported worsening mood swings, nausea, and vomiting. By this time she had lost her job. And in the weeks after the ALJ's hearing (on October 6) to around the time of the ALJ's denial (on October 28), Plaintiff reported experiencing five pseudoseizures, resulting in at least one trip to the emergency room.

The Court acknowledges that during this period (May-to-October 2009) Plaintiff reported doing well at times. For example, on July 22, she reported to Dr. Bains that her anxiety was controlled by an increase in her Klonopin, and on August 5 she denied feeling depressed, anxious, or having mood swings (although her mood was irritable

4

and her affect was tired). And the day after Dr. McGehee's evaluation Plaintiff reported to Dr. Bains that she was feeling better, her mood swings were controlled, she denied depression, and she had no complaints of anxiety. She also reported to Ms. Goodwin that her medication was controlling her headaches.

But Plaintiff submitted additional evidence to the Appeals Council after the ALJ's denial. This evidence included treatment notes from psychologist Suzanne McKenna, PhD. After her initial assessment of Plaintiff in December 2009, Dr. McKenna assigned Plaintiff a GAF score of 65 and stated Plaintiff's prognosis was "guarded to good at this time."[4] At her next visit however, Plaintiff reported that she was experiencing a lot of depression, which was being contributed to by her "fairly constant[ ]" worry over her finances. And at her next appointment she "disclosed that a common coping mechanism for her when she is quite stressed and/or quite angry is to cut herself." She stated she had last cut herself 3–4 months previously, and she was concerned it might happen again because of her financial stress and overall sense of failure. In January 2010, Dr. McKenna completed a mental health medical source statement and opined Plaintiff was even more limited than Dr. McGehee had found. This opinion stands in stark contrast to Dr. McKenna's initial GAF assessment.

In determining Plaintiff's RFC, the ALJ concluded in relevant part that Plaintiff could perform unskilled work so long as she was limited to simple and repetitive job instructions, no public contact, and no more than minimal contact with coworkers and supervisors. Although these are significant restrictions, the Court is unable to reconcile the ALJ's finding that Plaintiff could work with the evidence from May 2009 forward demonstrating the increase in the severity of Plaintiff's mental-health symptoms. The Court acknowledges the relevant time period for Plaintiff's claims ended on the date of the ALJ's decision (October 28, 2009). *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th

---

[4] A GAF score indicates a clinician's judgment of an individual's overall level of functioning. *See* DSM–IV–TR 32. A score in the 65–70 range reflects an individual who "generally functions pretty well" despite some mild symptoms or some difficulty in functioning. *Id.* at 34.

Cir. 2002). But Dr. McKenna's notes from December 2009 show Plaintiff may have been cutting herself that previous August or September, when some of her worst symptoms were reported (and when Dr. McGehee's evaluation occurred). And Dr. McKenna's opinion of Plaintiff's mental functioning—more restrictive than Dr. McGehee's—was rendered after she had treated Plaintiff at least 4 times and just 3 months after the ALJ's denial of benefits.

The Court concludes an expert opinion on Plaintiff's mental functional ability as of October 28, 2009, is needed. This case is reversed and remanded for the Commissioner to enlist a medical expert to review Plaintiff's entire medical file, including the additional information Plaintiff submitted to the Appeals Council. The expert's review should focus particularly on the evidence in the record from May 2009 forward for the purpose of determining Plaintiff's mental functional ability as of October 28, 2009. The medical expert shall also perform a consultative examination of Plaintiff for this purpose.

III. CONCLUSION

This case is reversed and remanded with the instructions stated in this Order.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 13, 2012
UNITED STATES DISTRICT COURT